UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR ENVIRONMENTAL HEALTH**<br>2201 Broadway, Suite 508<br>Oakland, CA 94612<br><br>            *Plaintiff,*<br><br>    v.<br><br><br>**AOC, LLC**<br>955 Highway 57<br>Piperton, TN 38017<br><br><br>            *Defendant.* | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Introductory Statement**

1.      This is a citizen enforcement suit brought by the Center for Environment Health ("CEH") to redress and prevent ongoing violations of reporting requirements for chemical substances under the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2629 ("TSCA").

2.      CEH is a non-profit organization striving to protect children and families from harmful chemicals in air, food, water, and everyday products. CEH protects people from toxic

1

chemicals by working with communities, businesses, and the government to demand and support business practices that are safe for human health and the environment. CEH is headquartered in Oakland, California.

3. Defendant AOC, LLC ("AOC") is a manufacturer and importer of chemicals subject to reporting obligations under TSCA. AOC is headquartered in Piperton, Tennessee.

4. CEH files this complaint under TSCA's citizen suit provision, section 20(a), 15 U.S.C. § 2619(a), seeking declaratory and injunctive relief to remedy AOC's TSCA violations and recovery of CEH's reasonable fees and costs.

5. AOC has violated, and continues to violate, the Chemical Data Reporting ("CDR") rule promulgated by the Environmental Protection Agency ("EPA") under section 8(a) of TSCA by failing to report imports over 25,000 pounds of toxic substances between 2016 and 2019. AOC has, and continues to, violate the CDR rule as to toxic chemicals, including but not limited to: phthalic anhydride, dicyclopentadiene, and neopentyl glycol. These chemicals were imported between 2016 and 2019 but were not reported by the January 29, 2021 reporting deadline as required by the CDR rule.

6. AOC's failure to report these imports undermines EPA's efforts under TSCA to evaluate and address chemical risks. It also prevents the public from tracking the movement of unsafe chemicals in commerce as well as monitoring their presence in communities.

7. Although CEH served AOC with a presuit notice of violation on February 23, 2024 that identified AOC's CDR rule violations, AOC has not remedied its noncompliance. Absent an order from this Court requiring reporting under the CDR rule, AOC will continue to be in non-compliance with TSCA.

**TSCA Citizens Suit Provision**

8. Under section 20(a)(1)(B) of TSCA, "any person may commence a civil action . . . against any person . . . who is alleged to be in violation of this Act . . . to restrain such violation." 15 U.S.C. §2619(a).

9. Section 20(b)(1)(A) provides that no action to restrain a violation of TSCA may be commenced "before the expiration of 60 days after the plaintiff has given notice of such violation (i) to the Administrator and (ii) to the person who is alleged to have committed such violation." 15 U.S.C. §2619(b).

10. Civil actions under section 20(a)(1)(B) of TSCA "shall be brought in the United States District Court for the district in which the alleged violation occurred or in which the defendant resides or in which the defendant's principal place of business is located . . . without regard to the amount in controversy or the citizenship of the parties." 15 U.S.C. §2619(a)(2).

12. Under section 20(c)(2), the court in an action to restrain a violation under section 20(a)(1) "may award costs of suit and reasonable fees for attorneys and expert witnesses if the court determines that such an award is appropriate." 15 U.S.C. §2619(c)(2).

**TSCA Provisions**

13. TSCA was enacted in 1976 to create a national program for assessing and managing the risks of chemicals to human health and the environment. Among the goals stated in TSCA section 2(b), 15 U.S.C. §2601(b), are that: (1) "adequate information should be developed with respect to the effect of chemical substances and mixtures on health and the environment" and (2) "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the

environment."

14. The need for this comprehensive framework for managing chemical risks was described as follows in the Senate Report on the original law:

> As the industry has grown, we have become literally surrounded by a man-made chemical environment. We utilize chemicals in a majority of our daily activities. We continually wear, wash with, inhale, and ingest a multitude of chemical substances. Many of these chemicals are essential to protect, prolong, and enhance our lives. Yet, too frequently, we have discovered that certain of these chemicals present lethal health and environmental dangers.

Senate Rept. No. 94-698, 94th Cong. 2d Sess. (1976) at 3.

15. After a multi-year effort to overhaul and strengthen its key provisions, TSCA was amended by the Frank R. Lautenberg Chemical Safety for the 21st Century Act ("LCSA"), which took effect on June 11, 2016. These TSCA amendments enhance the chemical regulatory authorities in section 6 by establishing a new integrated process for (1) prioritizing chemicals, (2) conducting risk evaluations on high- priority chemicals and (3) promulgating rules under section 6(a) to eliminate unreasonable risks identified in risk evaluations. Congress set strict deadlines for each of these steps and directed EPA to address a minimum number of chemicals by these deadlines. It also removed the impediments to effective regulation by eliminating any consideration of costs and other non-risk factors in determining whether chemicals present an unreasonable risk of injury and directing EPA to impose requirements "necessary so that the chemical no longer presents such [unreasonable] risk."

## Chemical Data Reporting Requirements Under TSCA

16. TSCA section 8(a)(1) provides that EPA "shall promulgate rules" that require each person who manufactures or processes a chemical substance to submit such reports as the "Administrator may reasonably require." 15 U.S. C. § 2607(a). Because section 3(9) defines "manufacture" to include "importation," reports must be submitted by importers of chemical

4

substances subject to these rules. The rulemaking authority under section 8 is a critical tool to collect the information on chemical use and exposure necessary for informed and effective risk evaluation and risk management.

17. In 2011, EPA promulgated the Chemical Data Reporting ("CDR") rule using its authority under TSCA section 8(a)(1). 40 C.F.R. Part 711. The rule is intended to support EPA's risk assessment and reduction efforts by providing basic information about the manufacturing, use and exposure profiles of chemicals in commerce. As the Agency explained in 2011, the new reporting requirements—

> will enhance the capabilities of the Agency to ensure risk management actions are taken on chemical substances which may pose the greatest concern. More in-depth reporting of the processing and use data, more careful consideration of the need for confidentiality claims, and adjustments to the specific data elements are important aspects of this action. By enhancing the data supplied to the Agency, EPA expects to more effectively and expeditiously identify and address potential risks posed by chemical substances and provide improved access and information to the public.

76 Federal Register 50818, 30819 (Aug. 16, 2011).

18. Under the rule, reporting is required for all chemicals manufactured or imported at a site in volumes of 25,000 pounds or more per facility in a given reporting year. For chemicals already regulated under certain TSCA provisions, the reporting threshold is set at 2,500 pounds per reporting year. Manufacturers and importers subject to the CDR must report every four years. The most recent reporting cycle was completed in early 2021, with reports due on January 29, 2021. For this CDR update, activities conducted in calendar years 2016-2019 determined the application of reporting requirements and the information to be reported.

19. Under the CDR rule, reports must be submitted using a "Form U." Separate forms must be filed for each manufacture or import site. The Form U must include import/manufacture volume for each of the last four years, the number of workers exposed and

basic information about site operations. It must also include information about industrial, commercial and consumer uses of the substance at other sites and the potential for exposure associated with these downstream activities.

20. In expanding the scope of reporting to capture these data elements, EPA emphasized that this "exposure information is an essential part of developing risk evaluations and, based on its experience in using this information, the Agency believes that collecting this exposure information is critical to its mission of characterizing exposure, identifying potential risks, and noting uncertainties for [reportable] chemical substances." 76 Federal Register 50823.

21. Section 15 of TSCA provides that it is unlawful for any person to

> (1) fail or refuse to comply with any requirement of this subchapter or any rule promulgated . . . under this title; or . . . . (3) fail or refuse to . . . submit reports, notices, or other information; . . . as required by this Act or a rule thereunder

15 U.S.C. §2614.

22. A failure or refusal to comply with the CDR rule constitutes a "fail[ure] or refus[al] to . . . submit reports . . .as required by this Act or a rule thereunder" and thus is an unlawful act under section 15. 15 U.S.C. § 2614. Non-compliance with the CDR rule therefore constitutes a "violation of this Act" subject to a citizens' suit under section 20(a)(1) of TSCA. 15 U.S.C. §2647(d).

## Jurisdiction and Venue

23. CDR reports must be reported through EPA's Central Data Exchange (CDX), an electronic site used for submission of reports to the Agency which is maintained at EPA headquarters at 1200 Pennsylvania Avenue NW in Washington DC.

24. CDR reports are reviewed and analyzed by EPA's Office of Chemical Safety and Pollution Prevention, which is located at EPA headquarters.

25. AOC's violations of the CDR rule accordingly occurred in the District of Columbia.

26. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §2619(a), under which citizens' suits to restrain violations of TSCA "shall be brought in the United States District Court for the district in which the alleged violation occurred."

27. Venue is proper in the District of Columbia under 28 U.S.C. §1391(b)(2) and 15 U.S.C. §2619(a), which provides that the district courts "shall have jurisdiction over suits brought under this section, without regard . . . to the citizenship of the parties" and "process may be served on the defendant in any judicial district in which the defendant resides or may be found."

## CEH's Notice of Intent to Sue

28. On February 23, 2024, CEH sent by registered mail a notice of intent to sue under TSCA section 20(b)(1) to AOC and EPA Acting Administrator Michael S. Reagan.

29. This presuit notice described with particularity AOC's violations of CDR requirements and provided AOC and EPA with the information called for in 40 C.F.R. § 702.62(b).

30. According to the signed receipts returned to CEH, AOC received its notice on February 29, 2024, and EPA received its notice on March 4, 2024.

31. In April 2024, counsel for CEH and counsel for AOC exchanged communications regarding allegations in CEH's notice of intent to sue. During these exchanges, CEH notified AOC that AOC had failed to report to EPA its significant imports of phthalic anhydride, dicyclopentadiene, and neopentyl glycol. On April 29, 2024, AOC's counsel advised CEH's counsel that AOC would investigate the imports. To date, AOC has

7

not provided any further information to CEH.

32. AOC has not remedied the CDR violations CEH identified in its presuit notice.

33. EPA has not commenced an action under TSCA to require AOC to comply with CDR requirements under TSCA section 20(b)(1)(B).

### AOC's Imports of Phthalic Anhydride, Dicyclopentadiene, and Neopentyl Glycol During the 2016-2019 CDR Reporting Period

34. AOC LLC describes itself as the leading global supplier of specialty formulations and solutions that enable customers to create robust, durable, and versatile products and components for applications in coatings and protective barriers, colorants and visual effects, adhesives and specialties, and conventional composites.

35. During the 2020 Reporting Period, AOC received at least 32 shipments of phthalic anhydride between 2016 to 2019, totaling 4,917,278 pounds.

36. No Form Us for the neopentyl glycol shipments were identified in EPA's CDR database for the 2020 reporting cycle.

37. During the 2020 Reporting Period, AOC received at least four shipments of dicyclopentadiene in 2018 to 2019, totaling 527,610 pounds.

38. No Form Us for the dicyclopentadiene shipments were identified in EPA's CDR database for the 2020 reporting cycle.

39. During the 2020 Reporting Period, AOC received at least 16 shipments of neopentyl glycol in 2019, totaling 697,873 pounds.

40. No Form Us for the neopentyl glycol shipments were identified in EPA's CDR database for the 2020 reporting cycle.

### Public Health Consequences of Failure to Report Chemical

## Imports under the CDR Rule

41. State and federal agencies charged with protecting public health need complete and accurate information about the total amount of toxic substances produced and imported in the United States and how and where toxic substances are distributed and used.

42. CDR reporting is an essential tool for tracking the production and use of toxic substances and AOC's failure to report large chemical imports under the CDR rule weakens the ability of EPA and local communities to evaluate and protect against serious threats to health.

## Claim for Relief

43. CEH hereby incorporates by reference the allegations above as if fully set forth herein.

44. Section 20(a)(1)(B) of TSCA authorizes any person to file suit in a United States district court against any person alleged be in violation of the Act to restrain such violation. 15 U.S.C. §2619(a)(1).

45. CEH provided notice to AOC and the EPA Administrator more than 60 days before filing this action, as required by TSCA section 20(b)(1). 15 U.S.C. §2619(b).

46. AOC imported 4,917,278 pounds of phthalic anhydride, 527,610 pounds of dicyclopentadiene, and 697,873 pounds of neopentyl glycol during 2016-2019 period for which it did not report.

47. AOC's phthalic anhydride, dicyclopentadiene, and neopentyl glycol imports each exceeded the 25,000-pound threshold for CDR reporting and are therefore reportable under the CDR rule.

48. As the importer of these substances, AOC was and remains in violation of the

CDR reporting requirements under 40 CFR §711.8.

49. These violations comprise "prohibited acts" under TSCA section 15 and represent "violations of this Act" for purposes of citizens' suits section 20(a)(1)(B).

50. The Court should order AOC to report its imports of the four unreported substances to EPA in compliance with the CDR rule and restrain AOC from any other ongoing violations of CDR reporting requirements.

## **Request for Relief**

WHEREFORE, CEH respectfully requests judgment in its favor and against AOC upon its claims and, further, requests that this Honorable Court enter judgment against AOC:

(1) Declaring that AOC's failure to report phthalic anhydride, dicyclopentadiene, and neopentyl glycol imports during 2016-2019 to EPA is a violation of the CDR reporting requirements at 40 CFR Part 711, a "prohibited act" under section 15 of TSCA and a "violation of this Act" actionable in a citizen's suit under section 20(a)(1)(B) of TSCA. 15 U.S.C. §§2614 and 2619(a);

(2) Declaring that CEH has met the notice requirements and other prerequisites for relief under TSCA section 20. 15 U.S.C. §2619(b);

(3) Ordering AOC to file Form Us with EPA for its imports of these three substances in compliance with CDR reporting requirements at 40 CFR Part 711. 15 U.S.C. §2616(1);

(4) Ordering AOC to audit its manufacturing and import activities to identify any other ongoing violations of CDR reporting requirements and remedy such violations of CDR reporting requirements pursuant to TSCA section 20. 15 U.S.C. §2616(1);

(5) Awarding CEH its costs of suit and reasonable fees for attorneys and expert witnesses in this action pursuant to 15 U.S.C. § 2619(c)(2); and

(6) Granting CEH such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 20th day of June 2024.

<u>/s/ Robert M. Sussman</u>
Robert M. Sussman (DC BAR NO 226746)
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, D.C. 20008
(202) 716-0118
Bobsussman1@comcast.net

<u>/s/ Lucas Williams</u>
Lucas Williams [*pro hac vice pending*]
Meredyth Merrow [*pro hac vice pending*]
Lexington Law Group, LLP
503 Divisadero Street
San Francisco, CA 94117
(415) 913-7800
lwillims@lexlawgroup.com
mmerrow@lexlawgroup.com

*Attorneys for Plaintiff Center for Environmental Health*